JOURNAL ENTRY AND OPINION CONCURRING and DISSENTING OPINION
{¶ 1} Appellant Willie Thomas ("Thomas") appeals his conviction and sentence entered by the Cuyahoga County Court of Common Pleas after a jury found him guilty of robbery, a felony of the second degree, in violation of R.C. 2911.02. For the reasons discussed below, we affirm the conviction, but vacate the sentence and remand for resentencing.
 {¶ 2} The following facts were adduced at Thomas's jury trial. On July 20, 2002, Officer Matthew Craska of the Cleveland Police Department was working as an off-duty, part-time security guard at a Save A Lot grocery store in Cleveland That afternoon, the store's front-end manager, Zeda Luna, saw a man walk through a checkout line and out the door with two bags of groceries he had not paid for. Officer Craska was alerted to the situation, looked towards the door, and saw Thomas exiting with two plastic bags that appeared full.
 {¶ 3} Officer Craska followed Thomas as he walked out of the store, across the street, and into a laundromat. Along the way, Officer Craska saw Thomas drop the bags on the sidewalk before crossing the street.
 {¶ 4} Once inside the laundromat, Officer Craska saw Thomas pick up the phone. Officer Craska instructed Thomas to hang up the phone and step outside. Once outside, Officer Craska asked for identification which Thomas provided. Officer Craska then told Thomas to return to the store with him, but Thomas refused at first. Eventually, Officer Craska convinced Thomas to walk back to the store with him.
 {¶ 5} When the two arrived back at the front door of the store, Thomas tried to run, whereupon Officer Craska tackled Thomas to the ground. Officer Craska testified he used non-deadly force on Thomas, including wrestling, takedown techniques, strikes, and punches. Officer Craska further testified at one point Thomas threw his head back and cut Craska on the side of his mouth. Officer Craska stated the cut was bleeding and it stung. Officer Craska also testified he sustained a scrape on his elbow and knee, and a small tear to the knee of his pants.
 {¶ 6} When a zone car driven by Officer Hageman arrived, Thomas was handcuffed and placed in the car. Thomas did not have any receipt on him for the merchandise. The bags discarded by Thomas contained several packages of chicken and beef worth approximately $25. Officer Hageman observed the cut on Officer Craska's lip that was bleeding.
 {¶ 7} Zeda Luna testified she went outside after Officer Craska, saw Thomas drop the bags, and watched Thomas struggling with Officer Craska. She further testified Thomas "cocked his head back, and his arms, and that's when he struck [Officer Craska]." Luna observed a scrape on Officer Craska's arm and a cut by his mouth.
 {¶ 8} Ronzel White, a store manager, testified he observed Officer Craska walking Thomas back to the store, saw Thomas trying to get loose, and watched Thomas swing his head and arms back and hit Officer Craska in the mouth. White also observed Officer Craska's lip was busted and bleeding.
 {¶ 9} There was also testimony that the store has cameras that would have videotaped the alleged shoplifting; however, a tape was never produced.
 {¶ 10} Thomas was convicted of robbery in violation of R.C.2911.02. The parties stipulated to the notice of prior conviction and repeat violent offender specifications. The trial court sentenced Thomas to a prison term of seven years.
 {¶ 11} Thomas has appealed his conviction and sentence raising six assignments of error. His first two assignments of error provide:
 {¶ 12} "I. The evidence was insufficient to support a conviction for the offense of robbery, as alleged."
 {¶ 13} "II. The conviction for the offense of robbery was against the manifest weight of the evidence."
 {¶ 14} The sufficiency of the evidence produced by the state and weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. When reviewing the sufficiency of the evidence, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 15} While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion. Id. at 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, 78 Ohio St.3d at 387; State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 16} R.C. 2911.02, the robbery statute, provides in relevant part:
"(A) No person, in attempting or committing a theft offense orin fleeing immediately after the attempt or offense, shall do anyof the following:
"* * *
"(2) Inflict, attempt to inflict, or threaten to inflictphysical harm on another.
 "(3) Use or threaten the immediate use of force againstanother."
 {¶ 17} The offense of robbery is differentiated from theft by the element of force or harm. State v. Hughes, Cuyahoga App. No. 81768, 2003-Ohio-2307. In similar cases where a defendant has struggled with a security guard while resisting apprehension after a shoplifting incident, this court has consistently applied the "single continuous transaction" rule. See, e.g., Hughes,
supra (defendant struck store employee attempting to apprehend him after he left the store without paying for several items);State v. Dunning (Mar. 23, 2000), Cuyahoga App. No. 75869 (defendant used force against security guard several blocks from store where theft occurred). We have determined such conduct, as part of a single continuous transaction committed by the defendant, constitutes sufficient evidence to establish the force or harm element of robbery in this context. Id.
 {¶ 18} In arguing that the evidence was insufficient to sustain a conviction of robbery, Thomas relies heavily on the fact that he had abandoned the groceries. Based on his claimed abandonment of the bags, Thomas argues that his use of force in this case was for the purpose of making an escape rather than for the purpose of depriving the store of merchandise. Thomas also argues the evidence failed to show he was "fleeing immediately after" as required for the offense since he had abandoned the groceries and walked away.
 {¶ 19} While it may be true Thomas abandoned his criminal purpose as he was being chased across the street by Officer Craska, the theft offense had already occurred.[1] The testimony presented at trial reflected that after Thomas was observed leaving the store without paying for the groceries, Officer Craska followed him across the street, returned to the store with Thomas, and was head-butted by Thomas. This evidence sufficiently established that Thomas, while fleeing from a theft or attempted theft, and as part of a continuous transaction, inflicted harm upon Officer Craska.
 {¶ 20} Insofar as Thomas questions whether his actions constitute "fleeing," the mere fact that Thomas was walking does not mean that his actions did not constitute "fleeing." The term "flee" encompasses an "endeavor to avoid or escape from." Statev. Henderson (July 24, 1988), Hamilton App. Nos. C-960734, and C-961072, citing Marion v. Gilmore (May 24, 1978), Marion App. No. 9-77-22. Moreover, "fleeing" contemplates not only an offender actually running from the scene, but also an offender's attempt to avoid or escape from an antagonist. Henderson,
supra.
 {¶ 21} Given the evidence, and viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, we conclude any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. Thus, Thomas's robbery conviction is sustained by sufficient evidence.
 {¶ 22} Additionally, this court cannot say that the trial court's decision is against the manifest weight of the evidence. After reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we are not persuaded that the jury clearly lost its way and created such a manifest miscarriage of justice such that Thomas's conviction must be reversed and a new trial ordered.
 {¶ 23} Because Thomas's conviction is supported by sufficient evidence and is not contrary to the manifest weight of evidence adduced at trial, Thomas's first and second assignments of error are overruled.
 {¶ 24} Thomas's third assignment of error states:
 {¶ 25} "The prosecution violated Mr. Thomas' constitutional rights under Article I, Section 10 of the Ohio Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it engaged in improper closing argument."
 {¶ 26} The prosecution is normally entitled to a certain degree of latitude in its concluding remarks. State v. Woodards
(1966), 6 Ohio St.2d 14. A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones. Berger v. United States (1935), 295 U.S. 78. It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury. State v. Potter (Mar. 20, 2003), Cuyahoga App. 81037. The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. Id.
 {¶ 27} In this assignment of error, Thomas cites several comments made by the prosecutor during closing argument that he argues were prosecutorial misconduct unfairly prejudicing his right to a fair trial.
 {¶ 28} Thomas first argues the prosecutor improperly cited the definition of flight in Webster's Dictionary. The actual comment by the prosecutor was as follows:
"* * * In part of her closing yesterday afternoon, defensecounsel indicated that the defendant didn't run, didn't sprintaway from the scene. Well, ladies and gentlemen, the word `flee,' as defined in Webster's New World Dictionary, firstdefinition, ` To go swiftly or escape.' Second definition, `Tovanish, to run away or try to escape from.'"
 {¶ 29} The prosecutor's statement was in response to the defense's position that Thomas was not "fleeing" as required by the robbery statute. Defense counsel, in her closing argument, had stated:
"Now, fleeing. The prosecutor would have you believe thatfleeing just means moving along. He's walking. Is that fleeing,because he's walking? In my mind, fleeing, at minimum, is a brisktrot or something. But he's walking. The officer is even walking.Nobody is running."
 {¶ 30} We find the prosecutor's use of the definition of the word "flee" was not improper. The word is not defined by the statute and the prosecutor informed the jurors of its regular meaning in direct response to defense counsel's own personal definition of the term.
 {¶ 31} A term which is not defined by a statute is accorded its common, ordinary meaning. Cleveland v. GSX Chemical Servicesof Ohio, Inc. (May 7, 1992), Cuyahoga App. No. 60512. Furthermore, R.C. 1.42 states that "words and phrases shall be read in context and construed according to the rules of grammar and common usage." Since the definition provided by the prosecutor was a common definition of the word "flee," we find the prosecutor did not commit misconduct in using the definition in his closing argument.
 {¶ 32} Thomas next claims the prosecutor improperly cited a statutory definition of "resisting arrest." During defense counsel's closing argument, she commented that "[b]ut for [Thomas's] resisting arrest, he wouldn't be sitting here." The prosecutor commented in his closing argument that one of the elements of robbery was "inflicted physical harm, or [attempt] to inflict physical harm." The prosecutor then misstated that "causing physical harm to a police officer isn't one of the elements of resisting arrest. You have to do that by force or recklessly." In concluding this point, the prosecutor stated defense counsel had in essence admitted that her client caused physical harm to the police officer.
 {¶ 33} We find that these comments were improper. Thomas had not been charged with resisting arrest, and therefore it was not appropriate law to apply to the case. Moreover, the prosecutor improperly applied elements of resisting arrest to the offense of robbery and his comments included misstatements of law. The prosecutor also improperly suggested defense counsel had admitted her client caused physical harm. Nevertheless, the court reminded the jury that closing arguments are not evidence and instructed the jury on the law for the offense of robbery and its required elements. We determine the prosecutor's comments did not unfairly prejudice Thomas's right to a fair trial. State v. Potter,
supra.
 {¶ 34} Lastly, Thomas claims the prosecutor made an improper insinuation that defense counsel knew her client was guilty. Specifically, Thomas refers to the following comment by the prosecutor:
"And more importantly, defense counsel, in her closingargument, she didn't tell you that this tape would exonerate herclient. She just said, ` Well, there is no tape. There is notape, and because of that, you should find my client not guilty.'That's essentially what she told you. So she doesn't even tellyou that it's going to exonerate her client."
 {¶ 35} We note initially that the defendant failed to object to this alleged improper comment about which he now complains. Therefore, he has waived all but plain error. State v. Slagle
(1992), 65 Ohio St.3d 597. "Plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise." State v. Moreland (1990),50 Ohio St.3d 58. We cannot say that the prosecutor's comment amounts to plain error in the context of the entire trial. While the tape with its content was not in evidence before the jury, there was testimony at trial that Thomas was seen walking through a checkout line and exiting the store with two bags of groceries he had not paid for. It cannot be said that, but for the comment, the outcome of the trial would clearly have been otherwise.
 {¶ 36} Thomas's third assignment of error is overruled.
 {¶ 37} Thomas's fourth assignment of error states:
 {¶ 38} "The trial court erred by imposing consecutive sentences when it failed to make findings required by R.C.2929.14(E)(4) with reasons in support thereof."
 {¶ 39} R.C. 2929.14(E)(4) provides that a trial court may impose consecutive sentences only when it concludes that the sentence is "(1) necessary to protect the public from future crime or to punish the offender; (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) the court finds one of the following: (a) the crimes were committed while awaiting trial or sentencing, under sanction, or under post-release control; (b) the harm caused by multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of his offense; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime. State v. Stadmire, Cuyahoga App. No. 81188, 2003-Ohio-873.
 {¶ 40} In addition, R.C. 2929.19(B)(2) provides that "a court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances: * * * (c) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences."
 {¶ 41} Thus, a trial court is required to make at least three findings under R.C. 2929.14(E)(4) prior to sentencing an offender to consecutive sentences and must give its reasons for imposing consecutive sentences pursuant to R.C. 2929.19(B)(2)(c).Stadmire, supra; see, also, State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165. A trial court's failure to sufficiently state its reasons on the record constitutes reversible error. Id.
 {¶ 42} In this case the trial court set forth the required findings on the record. The court stated:
"THE COURT: * * * All right. The Court's going to consider allthe purposes in 2929, purposes of sentencing, and the relevantfactors therein.
 "First, we want to punish the offender here for the crime hecommitted, and to protect the public from future crimes of thedefendant.
 "In the past he's had what we call glorified shopliftings, andthen he fought with the store owners. Here he's fighting with thepoliceman in uniform, threatening the policeman, being combative,and trying to hurt the policeman, and causing some physical harmto him.
"* * *
"Now, the Court also has to consider whether recidivism islikely. Well, of course it is. To conclude anything else, itwould be foolish. Same type of conduct over and over. * * *
 "So it would be silly to think recidivism isn't likely, and itwould be endangering the public. So prison is necessary here, andprison is the answer and it's required anyhow by our findingshere, certainly consistent with the sentencing purposes here.
 "And the only sentence that I could think of that would giveyou adequate punishment, give you a message, and keep you off thestreet, because I don't think you could be rehabilitated,frankly. I think you're a career criminal, is seven years LCI,with credit for time served. Anything else would not adequatelyprotect the public."
 {¶ 43} The court proceeded to sentence Thomas in a separate case and instructed that the sentences in the two cases would run consecutively.
 {¶ 44} Our review of the record reflects the trial court made the three required findings. First, the court found recidivism was likely and the sentence was necessary to protect the public. Second, the court reviewed Thomas's conduct and the danger he posed and found the sentence provided an adequate punishment. Third, the court commented on Thomas's criminal history and lack of rehabilitation and determined the sentence was necessary to protect the public.
 {¶ 45} While the trial court's findings did not mimic the exact language of R.C. 2929.14(E)(4), the statute does not require the trial court to recite its exact words to impose consecutive sentences. State v. Ebbing, Clermont App. No. CA2003-05-041, 2003-Ohio-5877. Moreover, we have previously recognized that R.C. 2929.14(E)(4) is satisfied when we can glean from the tenor of the trial court's comments, its findings, and the evidence that imposition of consecutive sentences is justified. See State v. Kessler, Cuyahoga App. No. 82956, 2003-Ohio-6052; State v. Robinson, Cuyahoga App. No. 81610, 2003-Ohio-1353.
 {¶ 46} We also find that the trial court sufficiently set forth the reasons for imposing consecutive sentences pursuant to R.C. 2929.19(B)(2)(c). There is no predetermined format a trial court must follow in setting forth the reasons for its findings pursuant to R.C. 2929.19(B)(2)(c). As we stated in State v.Webb, Cuyahoga App. No. 80206, 2003-Ohio-1718: "Although the court did not specifically state the findings first and then relate its reasons to the findings, there is no obligation to do so in the sentencing statutes. The sentencing statutes do not put an obligation upon the lower court to provide the statutory findings and its reasons in such close proximity on the record in order for the reasons to be of effect." Rather, the ability to clearly align the findings and reasons for consecutive sentences must be apparent from the record as a whole.
 {¶ 47} In this case, the trial court detailed its reasons for imposing consecutive sentences throughout its findings. The trial court referred to Thomas's past "glorified shopliftings" in which he fought with store owners. The court also reasoned that in the present case Thomas had fought with a policeman in uniform, was combative, and caused physical harm. The court found recidivism was likely and expressed the view that Thomas was a career criminal. The court also expressed the belief that Thomas could not be rehabilitated. These reasons were all related to the findings on the record.
 {¶ 48} Upon our review of the record, we find the trial court complied with the sentencing statutes and did not err in imposing a sentence that ran consecutive with a sentence imposed in a separate case. Thomas's fourth assignment of error is overruled.
 {¶ 49} Thomas's fifth assignment of error states:
 {¶ 50} "The trial court failed to adequately ensure that its total sentence was proportionate to sentences being given to similarly situated offenders who have committed similar offenses."
 {¶ 51} R.C. 2929.11(B) reads as follows: "(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(A) provides that the "overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender."
 {¶ 52} We have previously recognized that R.C. 2929.11 does not require a trial court to make findings on the record, but rather, it sets forth objectives for sentencing courts to achieve. State v. Georgakopoulos, Cuyahoga App. No. 81934, 2003-Ohio-4341. As we stated in Georgakopoulos, "trial courts are given broad but guarded discretion in applying these objectives to their respective evaluations of individual conduct at sentencing." Id.
 {¶ 53} Our review of the record does not demonstrate that the trial court failed to consider the objectives set forth in R.C.2929.11. Thomas was convicted of a robbery in which he fought with and caused physical injury to an officer in uniform. The court reviewed Thomas's criminal history and found that recidivism was likely. The court also stated that it did not believe Thomas could be rehabilitated and recognized the overriding purposes of felony sentencing, "to punish the offender here for the crime he committed, and to protect the public from future crimes of the defendant." Upon these considerations, the court imposed a seven-year sentence of imprisonment, to run consecutive to a nine-month sentence imposed in another case.
 {¶ 54} Nevertheless, Thomas argues that the trial court did not compare the sentence imposed with other sentences imposed for similar crimes committed by similar offenders. We have previously recognized that consistency in sentencing does not require uniform results. State v. Turner, Cuyahoga App. No. 81449, 2003-Ohio-4933. As we stated in Turner, "[t]here is no grid under Ohio law under which identical sentences must be imposed for various classifications of offenders. Instead, Ohio law offers a range of sentences so that divergent factors may be considered. * * * `The task of the appellate court is to examine the available data not to determine if the trial court has imposed a sentence that is in lockstep with others, but whether the sentence is so unusual as to be outside the mainstream of local judicial practice.'" Id. quoting State v. Ryan, Hamilton App. No. C-020283, 2003-Ohio-1188.
 {¶ 55} On balance, we find that the record adequately demonstrates that the trial court considered the objectives of R.C. 2929.11(B) when sentencing Thomas. Although the sentence may appear harsh, we do not find that the sentence was so unusual as to be considered outside the mainstream of local judicial practice. See State v. Hughes, Cuyahoga App. No. 81768, 2003-Ohio-2307 (imposing six-year sentence); State v. McDonald
(Dec. 6, 2001), Cuyahoga App. No. 78939 (imposing six-year sentence).[2] Thomas's fifth assignment of error is overruled.
 {¶ 56} Thomas's sixth assignment of error states:
 {¶ 57} "Under the sixth amendment [sic] to the United States Constitution to be present and represented by counsel at all critical stages of proceedings, and in violation of his right under the Fourteenth Amendment to the United States Constitution to Due Process of Law when it included the possibility that Mr. Thomas would serve a term of post-release control via a journal entry, after not having mentioned it at sentencing."
 {¶ 58} Thomas correctly argues that the trial court failed to notify him at the sentencing hearing, as required by R.C.2929.19, that he would be subject to post-release control. Thomas suggests that the post-release control term should be vacated as part of his sentence and relies on State v. Morrisey (Dec. 18, 2000), Cuyahoga App. No. 77179, for this argument.
 {¶ 59} The state concedes that the trial court failed to inform appellant that post-release control was part of his sentence. Nonetheless, it relies on this court's decision inState v. Johnson, Cuyahoga App. No. 80459, 2002-Ohio-4581, for the proposition that the case should be remanded for resentencing.
 {¶ 60} While we recognize there is a split of authority on this issue, we find that the appropriate action is to remand the case for resentencing. R.C. 2967.28(B)(3) mandates a post-release control period of three years for those convicted of second-degree felonies. Because of the mandatory language of R.C.2929.19, this court has held that the trial court has a mandatory duty at the sentencing hearing to notify the defendant that he or she is subject to post-release control. State v. Shepard,
Cuyahoga App. No. 82158, 2003-Ohio-4938; State v. Huber,
Cuyahoga App. No. 80616, 2002-Ohio-5839.
 {¶ 61} Due to the mandatory nature of post-release control in this case, its omission by the trial court makes the sentence statutorily incorrect. We therefore must vacate the sentence and remand the matter for resentencing in compliance with R.C.2929.19(B)(3). Thomas's sixth assignment of error is sustained.
 {¶ 62} Conviction affirmed, sentence vacated, remanded for resentencing.
Sweeney, P.J., concurs.
 Timothy E. McMonagle, J., concurs in part and dissents inpart. (see attached concurring and dissenting opinion.)
[1] Once criminal intent has been formed and "such intent is coupled with an overt act toward the commission of the contemplated offense, the abandonment of the criminal purpose will not act as a defense." State v. Cooper (1977),52 Ohio St.2d 163, vacated in part on other grounds (1978),438 U.S. 911.
[2] Since this case is nevertheless being remanded for resentencing as discussed below, this sentence may be revisited by the trial court.